IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| JOHN REECE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:13CV924 |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

THOMAS D. SCHROEDER, District Judge.

Plaintiff John Reece brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claim for Disability Insurance Benefits under Title II of the Act. (Doc. 1.) The parties have filed cross-motions for judgment (Docs. 17, 19), and the administrative record has been certified to the court for review. For the reasons set forth below, Reece's motion will be granted to the extent described below, the Commissioner's motion will be denied, and the matter will be remanded to the Commissioner.

**I. BACKGROUND**

Reece filed his application for Disability Insurance

Benefits ("DIB") on June 16, 2010, alleging a disability onset date of December 15, 2005. (Tr. at 177-83.)[1] His application was denied initially (id. at 81) and upon reconsideration (id. at 98). Thereafter, Reece requested a hearing *de novo* before an Administrative Law Judge ("ALJ"). (Id. at 132-33.) Reece, along with his attorney and a vocational expert ("VE"), attended the subsequent hearing on June 12, 2012. (Id. at 30.) The ALJ ultimately determined that Reece was not disabled within the meaning of the Act (id. at 25) and, on September 20, 2013, the Appeals Council denied Reece's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (id. at 1-3).

In rendering his disability determination, the ALJ made the following findings later adopted by the Commissioner:

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2010.

2. The claimant did not engage in substantial gainful activity during the period from his alleged onset date of December 15, 2005, through his date last insured of December 31, 2010 (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: bilateral knee osteoarthritis; degenerative disk disease of the lumbar spine; status post fractures of the right upper

---

[1] Transcript citations refer to the Administrative Transcript of Record filed manually with the Commissioner's Answer. (Doc. 13.)

>       extremity; and anxiety disorder (20 CFR 404.1520(c)).
>
>    . . . .
>
> 4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).
>
>    . . . .
>
> 5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except that he can occasionally push/pull with his right lower extremity. He can occasionally climb, balance, stoop, kneel, crouch, and crawl. He can frequently, but not continuously, reach, handle, and finger with his right upper extremity. He can occasionally gauge depth perception; he requires the use of a knee brace; and he must avoid even moderate exposure to hazardous conditions. He retains the mental residual functional capacity to perform simple, routine tasks; follow simple, short instructions; make simple, work-related decisions; adapt to a few workplace changes; and have occasional interaction with the general public.
>
>    . . . .
>
> 6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

(Id. at 13, 16, 19, 23.)

The ALJ then considered Reece's age, education, work experience, and the above residual functional capacity ("RFC"), along with the VE's testimony regarding these factors, and

3

determined that "there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569, 404.1569(a))." (Id. at 24.) Thus, the ALJ determined that Reece was not disabled under the meaning of the Act. (Id. at 25.)

## II. ANALYSIS

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of . . . review of [such an administrative] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case *de novo*." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (citations omitted) (internal brackets omitted) (setting out the standards for judicial review). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "[I]t consists of more than a mere scintilla of evidence but may be somewhat less than a

4

preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (quoting Laws, 368 F.2d at 642) (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Social Security Commissioner]." Mastro, 270 F.3d at 176 (quoting Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)) (internal brackets omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Social Security Commissioner or the ALJ]." Hancock, 667 F.3d at 472 (quoting Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005)). The issue before this court, therefore, "is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig, 76 F.3d at 589.

In undertaking this limited review, the court notes that in administrative proceedings, "[a] claimant for disability benefits bears the burden of proving a disability." Hall v.

5

Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)).

> Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to [his] past relevant work; and (5) if not, could perform any other work in the national economy.

Id. The claimant bears the burden as to the first four steps, but the Commissioner bears the burden as to the fifth step. Id. at 472-73.

In undertaking this sequential evaluation process, the five

---

[2] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

steps are considered in turn, although a finding adverse to the claimant at either of the first two steps forecloses a disability designation and ends the inquiry. In this regard, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

If a claimant carries his burden at each of the first two steps and also meets his burden at step three of establishing an impairment that meets or equals an impairment listed in the regulations, the claimant is disabled, and there is no need to proceed to step four or five. See Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then the analysis continues and the ALJ must assess the claimant's RFC. Id. at 179.[3] Step four then requires the ALJ to

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin

7

assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work based on that RFC, the analysis proceeds to the fifth step, which shifts the burden of proof and "requires the Commissioner to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry her "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

In the present case, the ALJ found that Reece had not engaged in "substantial gainful activity" since his amended alleged onset date. (Tr. at 13.) Reece therefore met his

---

impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

burden at step one of the sequential evaluation process. At step two, the ALJ further determined that Reece suffered from the following severe impairments: bilateral knee osteoarthritis; degenerative disk disease of the lumbar spine; status post factures of the right upper extremity; and anxiety disorder. (Id.) The ALJ found at step three that these impairments did not meet or medically equal a disability listing. (Id. at 16.) Accordingly, he assessed Reece's RFC and determined that he could perform medium work with some additional limitations. (Id. at 19.) Because none of Reece's past relevant jobs – as a groundskeeper, laborer/farm worker, lumber handler, and industrial truck driver – met these criteria, the ALJ found at step four that he could not return to any past relevant work. (Id. at 23.) Thus, the burden shifted to the Commissioner to prove that a "significant number of jobs exist which [Reece] could perform, despite [his] impairments." Hines, 453 F.3d at 563. The ALJ relied on the testimony of the VE and determined that Reece could perform the jobs of laundry worker II, washer/cleaner II, and porter (of used cars). (Tr. at 24-25.) Thus, the ALJ concluded that Reece was not disabled under the Act. (Id. at 25.)

Reece first argues that the ALJ erred by failing to give proper weight to the disability determination issued by the Department of Veterans Affairs ("VA"). (Doc. 18 at 4-6.) On

November 6, 2006, the Winston-Salem, North Carolina regional office of the VA determined that Reece had a 100% disability rating resulting from the combined effect of anxiety (70% disabling) and a "post operative right femur fracture with muscle herniation and leg shortening" (60% disabling). (Tr. at 903-06.) An April 12, 2010 letter from the regional office indicates that Reece continued to be 100% disabled under the VA's standards. (Id. at 699.) On that date, he was receiving monthly VA benefits of $2,919. (Id.) The ALJ noted the VA's determination but gave it "no weight" because Reece's "knee pain is relieved with his regular steroid injection, and he has substantial physical activities of daily living." (Id. at 23.) As to Reece's post traumatic stress, the ALJ noted that "the evidence demonstrates that he is able to function alone and out in public" and therefore "retains the mental residual functional capacity to perform simple, routine, and repetitive tasks, consistent with unskilled work, involving no more than occasional interaction with the general public." (Id.)

Shortly after the ALJ issued her decision, the Fourth Circuit clarified the weight due a VA disability determination in a benefits proceeding under the Act. The court held that although VA disability ratings are not binding on the ALJ, the ALJ must give the VA's findings "substantial weight" unless the record "clearly demonstrates" that they are entitled to less

10

weight. Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337, 343 (4th Cir. 2012). While the court recognized that the VA's determination is not binding on the Social Security Administration, it held that the substantial similarities between the programs counseled in favor of giving significant weight to the VA's determinations. Id. For example, "[b]oth programs evaluate a claimant's ability to perform full-time work in the national economy on a sustained and continuing basis; both focus on analyzing a claimant's functional limitations; and both require claimants to present extensive medical documentation in support of their claims." Id. (quoting McCartey v. Massanari, 298 F.3d 1072, 1076 (9th Cir. 2002)). Thus, remand is required in this case unless the record clearly demonstrates that the ALJ was entitled to assign no weight to the VA's conclusion. Id.

Because the ALJ issued her decision before Bird, she did not have the benefit of the Fourth Circuit's updated standard. The Commissioner argues nevertheless that the ALJ's decision "makes clear that the rating was: 1) not supported by medical treatment; 2) not supported by consultative opinion evidence; 3) inconsistent with Plaintiff's admitted social activities; and 4) inconsistent with plaintiff's work history while allegedly suffering from this disabling condition." (Doc. 20 at 6.) The court cannot agree.

The ALJ's decision indicates she did not apply the required presumption that the VA's rating be given substantial weight. Rather, she noted that she was required consider the opinion but emphasized that it was not binding upon the Commissioner. (Tr. at 23.) In addition, she failed to cite anything in the record to support her conclusion that Reece's knee pain is now less significant because it can be relieved by regular steroid injection, other than Reece's "substantial physical activities of daily living." Id. She also cited only Reece's ability to "function alone and out in public" to reject the VA's disability rating as to his mental state. It follows that it is not possible to determine whether the record "clearly demonstrates" that less than substantial weight should have been accorded the VA's disability rating. See Salazar v. Colvin, 1:10CV972, 2014 WL 486726, at *6 (M.D.N.C. Feb. 6, 2014) (collecting district court cases within the Fourth Circuit holding that remand is necessary under Bird when the ALJ fails to explicitly detail the reasons for declining to accord the VA's rating substantial weight). Therefore, remand is appropriate to allow the ALJ to consider the effect of the VA's disability rating in accordance with Bird.[4]

---

[4] The Commissioner states that she restricted her reply to the ALJ's rejection of the VA's anxiety rating and requests an opportunity to respond further should the court deem Reece's challenge to include the knee rating. (Doc. 20 at 6 n.2.) In light of the decision that

As a result of the conclusion that remand is necessary, which will require the ALJ to make a new disability determination, the court need not address Reece's other contention that the ALJ failed to properly incorporate the opinions of Drs. Jonathan Mayhew, Jill Rowan, and Elizabeth Anton regarding his social anxiety into his RFC. (See Doc. 18 at 6-8.)

### III. CONCLUSION

For the reasons stated, the court finds that the ALJ failed to either accord the VA's disability rating substantial weight or sufficiently explain her reasons for entirely rejecting it.

IT IS THEREFORE ORDERED that the Commissioner's decision finding no disability is REVERSED and the matter is REMANDED to the Commissioner under 42 U.S.C. § 405(g). The Commissioner is directed to remand the matter to the ALJ for further consideration of Reece's claims in light of the court's ruling. Therefore, Reece's motion for judgment (Doc. 17) is GRANTED to the extent set out herein, and the Commissioner's motion (Doc. 19) is DENIED.

                                        /s/   Thomas D. Schroeder
                                    United States District Judge

May 21, 2014

---

remand is required in any event, the court will not grant any additional briefing.